(No. 65946.—)

*In re* JAMES H. HIMMEL, Attorney, Respondent.

*Opinion filed September 22, 1988.—Rehearing denied
January 30, 1989.*

534

William F. Moran III, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

James H. Himmel, of Palos Heights, respondent *pro se.*

George B. Collins, of Collins & Bargione, of Chicago, for respondent.

JUSTICE STAMOS delivered the opinion of the court:

This is a disciplinary proceeding against respondent, James H. Himmel. On January 22, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (the Commission) filed a complaint with the Hearing Board, alleging that respondent violated Rule 1—103(a) of the Code of Professional Responsibility (the Code) (107 Ill. 2d R. 1—103(a)) by failing to disclose to the Commission information concerning attorney misconduct. On October 15, 1986, the Hearing Board found that respondent had violated the rule and recommended that respondent be reprimanded. The Administrator filed exceptions with the Review Board. The Review Board is-

sued its report on July 9, 1987, finding that respondent had not violated a disciplinary rule and recommending dismissal of the complaint. We granted the Administrator's petition for leave to file exceptions to the Review Board's report and recommendation. 107 Ill. 2d R. 753(e)(6).

We will briefly review the facts, which essentially involve three individuals: respondent, James H. Himmel, licensed to practice law in Illinois on November 6, 1975; his client, Tammy Forsberg, formerly known as Tammy McEathron; and her former attorney, John R. Casey.

The complaint alleges that respondent had knowledge of John Casey's conversion of Forsberg's funds and respondent failed to inform the Commission of this misconduct. The facts are as follows.

In October 1978, Tammy Forsberg was injured in a motorcycle accident. In June 1980, she retained John R. Casey to represent her in any personal injury or property damage claim resulting from the accident. Sometime in 1981, Casey negotiated a settlement of $35,000 on Forsberg's behalf. Pursuant to an agreement between Forsberg and Casey, one-third of any monies received would be paid to Casey as his attorney fee.

In March 1981, Casey received the $35,000 settlement check, endorsed it, and deposited the check into his client trust fund account. Subsequently, Casey converted the funds.

Between 1981 and 1983, Forsberg unsuccessfully attempted to collect her $23,233.34 share of the settlement proceeds. In March 1983, Forsberg retained respondent to collect her money and agreed to pay him one-third of any funds recovered above $23,233.34.

Respondent investigated the matter and discovered that Casey had misappropriated the settlement funds. In April 1983, respondent drafted an agreement in which Casey would pay Forsberg $75,000 in settlement of any

claim she might have against him for the misappropriated funds. By the terms of the agreement, Forsberg agreed not to initiate any criminal, civil, or attorney disciplinary action against Casey. This agreement was executed on April 11, 1983. Respondent stood to gain $17,000 or more if Casey honored the agreement. In February 1985, respondent filed suit against Casey for breaching the agreement, and a $100,000 judgment was entered against Casey. If Casey had satisfied the judgment, respondent's share would have been approximately $25,588.

The complaint stated that at no time did respondent inform the Commission of Casey's misconduct. According to the Administrator, respondent's first contact with the Commission was in response to the Commission's inquiry regarding the lawsuit against Casey.

In April 1985, the Administrator filed a petition to have Casey suspended from practicing law because of his conversion of client funds and his conduct involving moral turpitude in matters unrelated to Forsberg's claim. Casey was subsequently disbarred on consent on November 5, 1985.

A hearing on the complaint against the present respondent was held before the Hearing Board of the Commission on June 3, 1986. In its report, the Hearing Board noted that the evidence was not in dispute. The evidence supported the allegations in the complaint and provided additional facts as follows.

Before retaining respondent, Forsberg collected $5,000 from Casey. After being retained, respondent made inquiries regarding Casey's conversion, contacting the insurance company that issued the settlement check, its attorney, Forsberg, her mother, her fiance and Casey. Forsberg told respondent that she simply wanted her money back and specifically instructed respondent to take no other action. Because of respondent's efforts,

Forsberg collected another $10,400 from Casey. Respondent received no fee in this case.

The Hearing Board found that respondent received unprivileged information that Casey converted Forsberg's funds, and that respondent failed to relate the information to the Commission in violation of Rule 1—103(a) of the Code. The Hearing Board noted, however, that respondent had been practicing law for 11 years, had no prior record of any complaints, obtained as good a result as could be expected in the case, and requested no fee for recovering the $23,233.34. Accordingly, the Hearing Board recommended a private reprimand.

Upon the Administrator's exceptions to the Hearing Board's recommendation, the Review Board reviewed the matter. The Review Board's report stated that the client had contacted the Commission prior to retaining respondent and, therefore, the Commission did have knowledge of the alleged misconduct. Further, the Review Board noted that respondent respected the client's wishes regarding not pursuing a claim with the Commission. Accordingly, the Review Board recommended that the complaint be dismissed.

The Administrator now raises three issues for review: (1) whether the Review Board erred in concluding that respondent's client had informed the Commission of misconduct by her former attorney; (2) whether the Review Board erred in concluding that respondent had not violated Rule 1—103(a); and (3) whether the proven misconduct warrants at least a censure.

As to the first issue, the Administrator contends that the Review Board erred in finding that Forsberg informed the Commission of Casey's misconduct prior to retaining respondent. In support of this contention, the Administrator cites to testimony in the record showing that while Forsberg contacted the Commission and received a complaint form, she did not fill out the form, re-

turn it, advise the Commission of the facts, or name whom she wished to complain about. The Administrator further contends that even if Forsberg had reported Casey's misconduct to the Commission, such an action would not have relieved respondent of his duty to report under Rule 1—103(a). Additionally, the Administrator argues that no evidence exists to prove that respondent failed to report because he assumed that Forsberg had already reported the matter.

Respondent argues that the record shows that Forsberg did contact the Commission and was forwarded a complaint form, and that the record is not clear that Forsberg failed to disclose Casey's name to the Commission. Respondent also argues that Forsberg directed respondent not to pursue the claim against Casey, a claim she had already begun to pursue.

We begin our analysis by examining whether a client's complaint of attorney misconduct to the Commission can be a defense to an attorney's failure to report the same misconduct. Respondent offers no authority for such a defense and our research has disclosed none. Common sense would dictate that if a lawyer has a duty under the Code, the actions of a client would not relieve the attorney of his own duty. Accordingly, while the parties dispute whether or not respondent's client informed the Commission, that question is irrelevant to our inquiry in this case. We have held that the canons of ethics in the Code constitute a safe guide for professional conduct, and attorneys may be disciplined for not observing them. (*In re Yamaguchi* (1987), 118 Ill. 2d 417, 427, citing *In re Taylor* (1977), 66 Ill. 2d 567.) The question is, then, whether or not respondent violated the Code, not whether Forsberg informed the Commission of Casey's misconduct.

As to respondent's argument that he did not report Casey's misconduct because his client directed him not

to do so, we again note respondent's failure to suggest any legal support for such a defense. A lawyer, as an officer of the court, is duty-bound to uphold the rules in the Code. The title of Canon 1 (107 Ill. 2d Canon 1) reflects this obligation: "A lawyer should assist in maintaining the integrity and competence of the legal profession." A lawyer may not choose to circumvent the rules by simply asserting that his client asked him to do so.

As to the second issue, the Administrator argues that the Review Board erred in concluding that respondent did not violate Rule 1—103(a). The Administrator urges acceptance of the Hearing Board's finding that respondent had unprivileged knowledge of Casey's conversion of client funds, and that respondent failed to disclose that information to the Commission. The Administrator states that respondent's knowledge of Casey's conversion of client funds was knowledge of illegal conduct involving moral turpitude under *In re Stillo* (1977), 68 Ill. 2d 49, 54. Further, the Administrator argues that the information respondent received was not privileged under the definition of privileged information articulated by this court in *People v. Adam* (1972), 51 Ill. 2d 46, 48, *cert. denied* (1972), 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289. Therefore, the Administrator concludes, respondent violated his ethical duty to report misconduct under Rule 1—103(a). According to the Administrator, failure to disclose the information deprived the Commission of evidence of serious misconduct, evidence that would have assisted in the Commission's investigation of Casey.

Respondent contends that the information was privileged information received from his client, Forsberg, and therefore he was under no obligation to disclose the matter to the Commission. Respondent argues that his failure to report Casey's misconduct was motivated by his respect for his client's wishes, not by his desire for fi-

nancial gain. To support this assertion, respondent notes that his fee agreement with Forsberg was contingent upon her first receiving all the money Casey originally owed her. Further, respondent states that he has received no fee for his representation of Forsberg.

Our analysis of this issue begins with a reading of the applicable disciplinary rules. Rule 1—103(a) of the Code states:

"(a) A lawyer possessing unprivileged knowledge of a violation of Rule 1—102(a)(3) or (4) shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." 107 Ill. 2d R. 1—103(a).

Rule 1—102 of the Code states:

"(a) A lawyer shall not
(1) violate a disciplinary rule;
(2) circumvent a disciplinary rule through actions of another;
(3) engage in illegal conduct involving moral turpitude;
(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or
(5) engage in conduct that is prejudicial to the administration of justice." 107 Ill. 2d R. 1—102.

These rules essentially track the language of the American Bar Association Model Code of Professional Responsibility, upon which the Illinois Code was modeled. (See 107 Ill. 2d Rules art. VIII, Committee Commentary, at 604.) Therefore, we find instructive the opinion of the American Bar Association's Committee on Ethics and Professional Responsibility that discusses the Model Code's Disciplinary Rule 1—103 (Model Code of Professional Responsibility DR 1—103 (1979)). Informal Opinion 1210 states that under DR 1—103(a) it is the duty of a lawyer to report to the proper tribunal or authority any unprivileged knowledge of a lawyer's perpetration of any misconduct listed in Disciplinary Rule 1—

102. (ABA Committee on Ethics & Professional Responsibility, Informal Op. 1210 (1972) (hereinafter Informal Op. 1210).) The opinion states that "the Code of Professional Responsibility through its Disciplinary Rules necessarily deals directly with reporting of lawyer misconduct or misconduct of others directly observed in the legal practice or the administration of justice." Informal Op. 1210, at 447.

This court has also emphasized the importance of a lawyer's duty to report misconduct. In the case *In re Anglin* (1988), 122 Ill. 2d 531, because of the petitioner's refusal to answer questions regarding his knowledge of other persons' misconduct, we denied a petition for reinstatement to the roll of attorneys licensed to practice in Illinois. We stated, "Under Disciplinary Rule 1–103 a lawyer has the duty to report the misconduct of other lawyers. (107 Ill. 2d Rules 1–103, 1–102(a)(3), (a)(4).) Petitioner's belief in a code of silence indicates to us that he is not at present fully rehabilitated or fit to practice law." (*Anglin*, 122 Ill. 2d at 539.) Thus, if the present respondent's conduct did violate the rule on reporting misconduct, imposition of discipline for such a breach of duty is mandated.

The question whether the information that respondent possessed was protected by the attorney-client privilege, and thus exempt from the reporting rule, requires application of this court's definition of the privilege. We have stated that " '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' " (*People v. Adam* (1972), 51 Ill. 2d 46, 48 (quoting 8 J. Wigmore, Evidence §2292 (McNaughton rev. ed. 1961)), *cert. denied* (1972), 409 U.S. 948, 34 L.

Ed. 2d 218, 93 S. Ct. 289.) We agree with the Administrator's argument that the communication regarding Casey's conduct does not meet this definition. The record does not suggest that this information was communicated by Forsberg to the respondent in confidence. We have held that information voluntarily disclosed by a client to an attorney, in the presence of third parties who are not agents of the client or attorney, is not privileged information. (*People v. Williams* (1983), 97 Ill. 2d 252, 295, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) In this case, Forsberg discussed the matter with respondent at various times while her mother and her fiance were present. Consequently, unless the mother and fiance were agents of respondent's client, the information communicated was not privileged. Moreover, we have also stated that matters intended by a client for disclosure by the client's attorney to third parties, who are not agents of either the client or the attorney, are not privileged. (*People v. Werhollick* (1970), 45 Ill. 2d 459, 462.) The record shows that respondent, with Forsberg's consent, discussed Casey's conversion of her funds with the insurance company involved, the insurance company's lawyer, and with Casey himself. Thus, under *Werhollick* and probably *Williams*, the information was not privileged.

Though respondent repeatedly asserts that his failure to report was motivated not by financial gain but by the request of his client, we do not deem such an argument relevant in this case. This court has stated that discipline may be appropriate even if no dishonest motive for the misconduct exists. (*In re Weinberg* (1988), 119 Ill. 2d 309, 315; *In re Clayter* (1980), 78 Ill. 2d 276, 283.) In addition, we have held that client approval of an attorney's action does not immunize an attorney from disciplinary action. (*In re Thompson* (1963), 30 Ill. 2d 560, 569; *People ex rel. Scholes v. Keithley* (1906), 225 Ill. 30, 41.) We

have already dealt with, and dismissed, respondent's assertion that his conduct is acceptable because he was acting pursuant to his client's directions.

Respondent does not argue that Casey's conversion of Forsberg's funds was not illegal conduct involving moral turpitude under Rule 1—102(a)(3) or conduct involving dishonesty, fraud, deceit, or misrepresentation under Rule 1—102(a)(4). (107 Ill. 2d Rules 1—102(a)(3), (a)(4).) It is clear that conversion of client funds is, indeed, conduct involving moral turpitude. (*In re Levin* (1987), 118 Ill. 2d 77, 88; *In re Stillo* (1977), 68 Ill. 2d 49, 54.) We conclude, then, that respondent possessed unprivileged knowledge of Casey's conversion of client funds, which is illegal conduct involving moral turpitude, and that respondent failed in his duty to report such misconduct to the Commission. Because no defense exists, we agree with the Hearing Board's finding that respondent has violated Rule 1—103(a) and must be disciplined.

The third issue concerns the appropriate quantum of discipline to be imposed in this case. The Administrator contends that respondent's misconduct warrants at least a censure, although the Hearing Board recommended a private reprimand and the Review Board recommended dismissal of the matter entirely. In support of the request for a greater quantum of discipline, the Administrator cites to the purposes of attorney discipline, which include maintaining the integrity of the legal profession and safeguarding the administration of justice. The Administrator argues that these purposes will not be served unless respondent is publicly disciplined so that the profession will be on notice that a violation of Rule 1—103(a) will not be tolerated. The Administrator argues that a more severe sanction is necessary because respondent deprived the Commission of evidence of another attorney's conversion and thereby interfered with

the Commission's investigative function under Supreme Court Rule 752 (107 Ill. 2d R. 752). Citing to the Rule 774 petition (107 Ill. 2d R. 774) filed against Casey, the Administrator notes that Casey converted many clients' funds after respondent's duty to report Casey arose. The Administrator also argues that both respondent and his client behaved in contravention of the Criminal Code's prohibition against compounding a crime by agreeing with Casey not to report him, in exchange for settlement funds.

In his defense, respondent reiterates his arguments that he was not motivated by desire for financial gain. He also states that Forsberg was pleased with his performance on her behalf. According to respondent, his failure to report was a "judgment call" which resulted positively in Forsberg's regaining some of her funds from Casey.

In evaluating the proper quantum of discipline to impose, we note that it is this court's responsibility to determine appropriate sanctions in attorney disciplinary cases. (*In re Levin* (1987), 118 Ill. 77, 87, citing *In re Hopper* (1981), 85 Ill. 2d 318, 323.) We have stated that while recommendations of the Boards are to be considered, this court ultimately bears responsibility for deciding an appropriate sanction. (*In re Weinberg* (1988), 119 Ill. 2d 309, 314, citing *In re Winn* (1984), 103 Ill. 2d 334, 337.) We reiterate our statement that " '[w]hen determining the nature and extent of discipline to be imposed, the respondent's actions must be viewed in relationship "to the underlying purposes of our disciplinary process, which purposes are to maintain the integrity of the legal profession, to protect the administration of justice from reproach, and to safeguard the public." (*In re LaPinska* (1978), 72 Ill. 2d 461, 473.)' " *In re Levin* (1987), 118 Ill. 2d 77, 87, quoting *In re Crisel* (1984), 101 Ill. 2d 332, 343.

Bearing these principles in mind, we agree with the Administrator that public discipline is necessary in this case to carry out the purposes of attorney discipline. While we have considered the Boards' recommendations in this matter, we cannot agree with the Review Board that respondent's conduct served to rectify a wrong and did not injure the bar, the public, or the administration of justice. Though we agree with the Hearing Board's assessment that respondent violated Rule 1—103 of the Code, we do not agree that the facts warrant only a private reprimand. As previously stated, the evidence proved that respondent possessed unprivileged knowledge of Casey's conversion of client funds, yet respondent did not report Casey's misconduct.

This failure to report resulted in interference with the Commission's investigation of Casey, and thus with the administration of justice. Perhaps some members of the public would have been spared from Casey's misconduct had respondent reported the information as soon as he knew of Casey's conversions of client funds. We are particularly disturbed by the fact that respondent chose to draft a settlement agreement with Casey rather than report his misconduct. As the Administrator has stated, by this conduct, both respondent and his client ran afoul of the Criminal Code's prohibition against compounding a crime, which states in section 32—1:

"(a) A person compounds a crime when he receives or offers to another any consideration for a promise not to prosecute or aid in the prosecution of an offender.

(b) Sentence. Compounding a crime is a petty offense." (Ill. Rev. Stat. 1987, ch. 38, par. 32—1.)

Both respondent and his client stood to gain financially by agreeing not to prosecute or report Casey for conversion. According to the settlement agreement, respondent would have received $17,000 or more as his fee. If Casey had satisfied the judgment entered against him for fail-

ure to honor the settlement agreement, respondent would have collected approximately $25,588.

We have held that fairness dictates consideration of mitigating factors in disciplinary cases. (*In re Yamaguchi* (1987), 118 Ill. 2d 417, 428, citing *In re Neff* (1980), 83 Ill. 2d 20.) Therefore, we do consider the fact that Forsberg recovered $10,400 through respondent's services, that respondent has practiced law for 11 years with no record of complaints, and that he requested no fee for minimum collection of Forsberg's funds. However, these considerations do not outweigh the serious nature of respondent's failure to report Casey, the resulting interference with the Commission's investigation of Casey, and respondent's ill-advised choice to settle with Casey rather than report his misconduct.

Accordingly, it is ordered that respondent be suspended from the practice of law for one year.

*Respondent suspended.*